UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFERY JEROME FUSSELL                          CIVIL ACTION

VERSUS

DARRELL VANNOY                          NO.: 13-00571-BAJ-EWD

### RULING AND ORDER

Before the Court are two motions filed by Defendant Darrell Vannoy ("Defendant"): a **Motion for Judgment on the Pleadings (Doc. 36)** and a **Motion for Summary Judgment (Doc. 39)**. Plaintiff Jeffery Fussell ("Plaintiff") opposes both, (Docs. 37, 43), in memoranda to which Defendant has replied, (Docs. 42, 46). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons explained herein, Defendant's **Motion for Summary Judgment (Doc. 39)** is **GRANTED** and Defendant's **Motion for Judgment on the Pleadings (Doc. 36)** is **DENIED** as moot.

### I.  BACKGROUND

Plaintiff is an inmate at the Louisiana State Penitentiary ("LSP"). He has been incarcerated since 1984, and is currently serving a life sentence for second-degree murder. (*See* Doc. 39-3 at p. 5).

On April 28, 1989, Plaintiff stabbed a fellow LSP inmate to death with a "free world" pocket knife that he claims to have obtained "from a Louisiana State

1

Penitentiary Prison Guard . . . ." (*See* Doc. 1 at p. 7, ¶ 5); (*See* Doc. 39-2[1] at ¶ 4); (*See* Doc. 39-9). For the last 27 years, however, Plaintiff has been unwilling to identify the guard in question out of "concerns for his own safety" and well-being. (*See* Doc. 1 at pp. 9—10, ¶ 11).

Plaintiff's silence allegedly does not sit well with Defendant, who was, at the time of the stabbing, a Lieutenant Colonel at LSP. (*See* Doc. 39-4 at p. 1). More specifically, Plaintiff alleges that Defendant told him, in 1989, that he would "personally see to it that" Plaintiff "never [be] released from Administrative Segregation Extended Lockdown back into the prison general population" unless and until he identifies the guard that gave him the knife. (*See* Doc. 1 at p. 10, ¶ 12). Plaintiff has been housed in various LSP "extended lockdown units"[2] ever since. (*See* Doc. 39-2 at ¶ 7).

On July 25, 2013, Plaintiff filed this lawsuit alleging that the conditions of his extended lockdown violate the Eighth Amendment's prohibition on cruel and unusual punishment.[3] (*See* Doc. 1 at p. 4). From Defendant, Plaintiff seeks monetary

---

[1] Under this Court's local rules, "[e]very motion for summary judgment shall be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." LR 56(a). Defendant has complied therewith. *See* Doc. 39-2. Plaintiff, however, has failed to submit "a separate, short and concise statement" in opposition thereto. *See* Doc. 43. Accordingly, "[a]ll material facts set forth" in Defendant's statement "will be deemed admitted" for purposes of this Ruling and Order. LR 56(b).

[2] For a description of extended lockdown at the Louisiana State Penitentiary, *see Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 659—60 (M.D. La. 2007) (describing extended lockdown as encompassing 24-hour isolation and "additional restrictions on privileges generally available to inmates such as personal property, reading materials, access to legal resources, work, and visitation rights").

[3] The Fifth Circuit has already affirmed the Court's dismissal of Plaintiff's other federal claims. *See* Doc. 15 at p. 6 ("The district court's dismissal of Fussell's Eighth Amendment claim is REVERSED. To the extent that Fussell's complaint asserts other claims, the district court's dismissal is AFFIRMED.").

damages.[4] (*See id.*). From the Court, Plaintiff seeks an injunction ordering that he be released into general population. (*See id.*).

Defendant denies all of the aforementioned allegations and asserts qualified immunity as an affirmative defense. (*See* Doc. 26).

## II.   LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict

---

[4] For purposes of this Ruling and Order, the Court will assume that Defendant is sued in both his individual and official capacities. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (noting that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers").

3

in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972)

## III.   DISCUSSION

### A.   Plaintiff's Individual Capacity Claim

First, the Court will determine whether Plaintiff's individual capacity claim is barred by the doctrine of qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When pleaded in a motion for summary judgment, qualified immunity shifts the

4

burden from the defendant to the plaintiff to establish, by competent evidence,[5] that
there is a genuine dispute of material fact with respect to whether (1) the official
violated an actual statutory or constitutional right and (2) the official's actions were
objectively unreasonable in light of clearly established law at the time of the conduct
in question. *Pearson*, 555 U.S. at 232; *Poole v. City of Shreveport*, 691 F.3d 624, 627
(5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit has held that
even when construing all facts and drawing all reasonable inferences in a light most
favorable to the non-moving party, qualified immunity immunizes "all but the plainly
incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

### 1.    Eighth Amendment Framework

Plaintiff's cause of action arises under the Eighth Amendment which, for
purposes of this Ruling and Order, bars state officials from subjecting prisoners to
"wanton and unnecessary" pain. *Rhodes v. Chapman*, 452 U.S. 337, 346—47 (1981).

To determine which prison conditions withstand constitutional scrutiny, the
Court employs a two-part test. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).
First, the Court must determine whether the complained of conditions are "so serious
as to deprive [Plaintiff] of the minimal measure of life's necessities" or "some basic
human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal
quotations omitted). Second, the Court must determine whether Defendant acted

---

[5] Disappointingly, Plaintiff's opposition, Doc. 43, is devoid of any evidence whatsoever. *See United States v. Rojas Alvarez*, 451 F.3d 320, 336 (5th Cir. 2006) (noting that "argument is not evidence").

with deliberate indifference to Plaintiff's "health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods*, 51 F.3d at 581.

In order for Plaintiff to establish a constitutional violation, both of the aforementioned elements must be met. *Woods*, 51 F.3d at 581.

a.    The First Element

The Eighth Amendment mandates that inmates be afforded "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. These necessities include "adequate food, clothing, shelter, and medical care . . . ." *Id*. at 832. Implicit also is the requirement that prison officials "take reasonable measures to guarantee the safety of the inmates" within their control. *Id*.

Plaintiff does not allege that he is unfed, unclothed, unhoused, unhealthy, or unsafe. Still, Plaintiff argues that his 27-plus years in extended lockdown, *i.e.*, solitary confinement, *see supra* p. 2 n.2, violates the Eighth Amendment.

The isolation inherent in extended lockdown is only "constitutionally objectionable," *see In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999), when imposed without penological justification, *see Rhodes*, 452 U.S. at 346. *But see Davis v. Ayala*, 135 S. Ct. 2187, 2208—10 (2015) (Kennedy, J., concurring). Plaintiff in this case has received 87 disciplinary write-ups since he stabbed another inmate to death on April 28, 1989. (*See* Doc. 39-5 at pp. 2—7) (Nos. 74—160). These write-ups include, but are not limited to, contraband, aggravated disobedience, aggravated sex offense, defiance, property destruction, fighting, aggressive malingering, and gambling. (*See* Doc. 39-

6

13 at pp. 21—31) ("offender rules and violation descriptions"). It is not as if Plaintiff simply refused "to stand for the count" or was caught "sleeping at the wrong end of the bed . . . ." *See Morris v. Travisono*, 549 F. Supp. 291, 296 (D.R.I. 1982), *aff'd*, 707 F.2d 28 (1st Cir. 1983).

Plaintiff, in fact, filed this lawsuit alleging that he was being held in extended lockdown "[w]ithout any penological justification," (*see* Doc. 1 at p. 12, ¶ 15), just 24 days after he was written-up for defiance and aggravated disobedience, (*see* Doc. 39-5 at p. 3) (No. 157). Defiance and aggravated disobedience are both Schedule B offenses. (*See* Doc. 39-13 at pp. 12). That is, they are "[m]ajor violations" under Department Regulation No. B-05-001. (*See* Doc. 39-13 at p. 17, ¶ F); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (noting that an inmate's otherwise "seemingly innocuous" conduct may create "significant" problems for those who seek to maintain "the order and security of the prison"). Prison officials are afforded[6] "wide-ranging deference" in maintaining institutional order and control. *Hewitt v. Helms*, 459 U.S. 460, 472 (1983) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *see also Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (noting that the

---

[6] As an alternative ground for summary judgment, Defendant asserts that "I have never been present for a lockdown review panel regarding Mr. Fussell, nor have I participated in a lockdown review panel regarding Mr. Fussell." *See* Doc. 39-4 at p. 2. "Supervisory officers . . . cannot be held liable under § 1983 . . . on any theory of vicarious liability." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). But Plaintiff does not seek to hold Defendant liability under any theory of vicarious liability. Plaintiff seeks to hold Defendant liable for "personally and directly" working to ensure that he remain in extended lockdown for the last 27-plus years. *See Washington v. Cain*, No. CIV.A. 10-0018-FJP-D, 2010 WL 3724516, at *3 (M.D. La. Aug. 17, 2010), *report and recommendation adopted*, No. CIV.A. 10-0018-FJP-D, 2010 WL 3724515 (M.D. La. Sept. 14, 2010). Defendant admits, *see* Tr. of Oral Arg., that he has the authority to move Plaintiff into general population, *see* Doc. 39-13 at pp. 18—19. He simply refuses to do so. *See* Doc. 39-4 at p. 2. That refusal is the subject of this litigation. The lockdown review panel is nothing more than a red herring.

7

Fifth Circuit "has repeatedly affirmed that prison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order") (internal quotations and alterations omitted). Where, as here, Plaintiff's "disruptive behavior" raises "security concern[s],"[7] the Eighth Amendment affords him no relief. *See Basey v. Collins*, No. 95-40651, 1996 WL 459949, at *1 (5th Cir. July 25, 1996); *see also Overton v. Bazzetta*, 539 U.S. 126, 133 (2003) (recognizing that "internal security" may be "the most legitimate of penological goals").

b.    *The Second Element*

A deliberate indifference analysis is not necessary, as the Court has already held that Plaintiff's Eighth Amendment claim fails as a matter of law. *See supra* p. 6 (noting that "[i]n order for Plaintiff to establish a constitutional violation, both of the aforementioned elements must be met"). Nonetheless, the Court finds that in this case there is no evidence of deliberate indifference by Defendant or anybody else.

Plaintiff asserts that as a result of his 27-plus years in solitary confinement, he has been diagnosed with psychological disorders including, but not limited to, "situational anxiety with suicidal thoughts," "adjustment disorders with anxious moods," "adult antisocial behavior," "boardline [sic] intellectual functioning," and "situational depression and personality disorder."[8] (*See* Doc. 1 at p. 14). As a result,

---

[7] To be sure, Plaintiff's placement in extended lockdown is reviewed by a lockdown review panel "at least once every 90 days." *See* Doc. 39-10 at pp. 4—5.

[8] Plaintiff's counsel has failed to provide the Court with medical records documenting any of the aforementioned illnesses.

LSP's Mental Health Department has allegedly had to prescribe Plaintiff "numerous Mental Health Medications . . . ." (*Id.*). He has also allegedly been placed on suicide watch "numerous" times. (*Id.*).

The Court does not question that Plaintiff's 27-plus years in solitary confinement have caused him significant harm. "[P]lenty of medical and psychological literature" all-but confirms as much. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). The question, however, is whether Defendant has shown deliberate indifference to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 834 (1994). Deliberate indifference requires Plaintiff to "come forward with evidence from which" the Court can infer that Defendant "knowingly and unreasonably" disregarded an "objectively intolerable risk of harm . . . ." *See id.* at 846. No such evidence is before the Court at this time.[9]

Defendant is not, nor has he ever been, a member of LSP's Mental Health Department. (*See* Doc. 39-4 at p. 1). Moreover, even if one were to assume that Defendant has some level of control over LSP's Mental Health Department, Plaintiff is, by all accounts, actively being treated for the injuries of which he complains. *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (acknowledging that "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference, absent exceptional circumstances); *In re Long Term Admin. Segregation*, 174 F.3d at 472 (conducting a similar deliberate indifference analysis).

---

[9] For an example of an Eighth Amendment violation, *see Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015) (holding that the LSP's decision to house plaintiffs "in very hot cells without sufficient access to heat-relief measures, while knowing that each suffers from conditions that render him extremely vulnerable to serious heat-related injury, violates the Eighth Amendment").

Accordingly, Plaintiff's Eighth Amendment claim brought against Defendant in his individual capacity is **DISMISSED WITH PREJUDICE** pursuant to Rule 56.

### B.     Plaintiff's Official Capacity Claim

"The doctrine of qualified immunity does not insulate from liability . . . a person acting in his official capacity." *Thornhill v. Breazeale*, 88 F. Supp. 2d 647, 653 (S.D. Miss. 2000) (citing *Owen v. City of Indep., Mo.*, 445 U.S. 622 (1980)). Nonetheless, in order in obtain a permanent injunction, Plaintiff must "prevail on the merits of his claim . . . ." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004); *see also VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (listing the four elements necessary to obtain a permanent injunction).

Given that the Court has already held that Plaintiff's Eighth Amendment claim fails as a matter of law, *see supra* pp. 5—9, Plaintiff's request for an injunction ordering that he be released into general population is **DENIED**.

### C.     Final Observations

Plaintiff last violated Angola's rules in June 2015. (*See* Doc. 39-5 at p. 2) (No. 160). That violation was a Schedule A violation for disrespect, which prohibits inmates from subjecting "[e]mployees, visitors, guests or their families . . . to disrespectful conversation, correspondence, phone calls, actions or gestures." (*See* Doc. 39-13 at p. 23). An inmate is also said to be disrespectful when he fails to "address employees, visitors, guests or their families by proper title or rank . . . ." (*Id.*).

10

Yet even if Plaintiff was disrespectful on the date in question, Plaintiff has not committed a single Schedule B offense[10] in almost two years. (*See* Doc. 39-5 at p. 2) (No. 159). "There is simply no" reason to believe that Plaintiff is, at this moment, "any more difficult to control than other inmates who are sufficiently 'dangerous' that they must be housed" at LSP. *See Morris*, 549 F. Supp. at 296. The lockdown review panel that reviews Plaintiff's status every 90 days, *see supra* p. 8 n.7, has, for the last four years, cited only two reasons[11] for Plaintiff's continued isolation: (1) the "Nature of Original Reason for Lockdown," (Doc. 39-6 at 134—46, 148—73), and (2) the "Nature of Commitment Offense," (*id.* at p. 147).

These are things that Plaintiff simply cannot change. And to the extent that Plaintiff's isolation "is effectively indefinite," it may very well violate the Fourteenth Amendment. *Wilkerson v. Goodwin*, 774 F.3d 845, 855—57 (5th Cir. 2014) (holding that "segregated confinement is . . . grounds for a due process claim [where] . . . it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison line").

Prison officials have an obligation to ensure that Plaintiff's continued isolation is as penologically justified today as it was 27-plus years ago. *See Kelly v. Brewer*, 525 F.2d 394, 400—01 (8th Cir. 1975) (noting that "[c]onditions in prisons change as they do everywhere else, and a reason for administrative segregation of an inmate that is valid today may not necessarily be valid six months or a year in the future"). Put

---

[10] *See supra* p. 7 (noting that Schedule B offenses are "[m]ajor violations" under Department Regulation No. B-05-001).

11

another way, the Constitution affords Plaintiff the right to have his isolation periodically reviewed. That review must be real, not fake. It most assuredly requires more than the mindless checking of a box.

### IV.   CONCLUSION

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Doc. 39)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's **Motion for Judgment on the Pleadings (Doc. 36)** is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claim is **DISMISSED WITH PREJUDICE** pursuant to Rule 56. To the extent that Plaintiff's complaint raises any state law claims, the Court declines to exercise jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).

Baton Rouge, Louisiana, this 22ⁿᵈ day of June, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**